Wan am aker, J.
The case at bar is for the recovery back of money claimed to have been unlawfully paid out of the county treasury by virtue of Section 2921, General Code, upon the state of facts set forth in the petition, which, boiled down, are substantially as follows:
*170 Ezra Baker was surety upon the bond of one Abe Oda, who became a contractor for the construction of a ditch improvement known as the Bridge creek ditch improvement; that Ocla became unable to carry out this contract and the defendant Ezra Baker took the contract and proceeded to execute it; that in the course of the work the county commissioners changed the specifications so as to materially reduce the amount of work; that the written contract provided among other things that where a change is made there should be added to or deducted from the contract price accordingly as the change required more or less labor or material; that under this provision of the contract the engineer in charge of the work made an estimate of the amount that Baker was to receive; that this estimate was $497.75 less than the contract for the original work; that the amount of this estimate was allowed and paid by the commissioners; that subsequently Baker presented a bill to the commissioners for the additional amount of $497.75, which was allowed by the commissioners; that an order or warrant was drawn in favor of Baker by the auditor upon the treasurer in' the following words and figures:
“Series P. $497.75.
“Auditor's Office, Darke County, Ohio.
“Greenville, Ohio, December 2, 1908.

“The Treasurer of Darke County:

“Pay Ezra Baker, or order, four hundred ninety-seven and 75-100 dollars for final estimate on Bridge creek .ditch improvement out of the. ditch funds, by order of Comrs.
“No. 1675. Frank Snyder, Auditor.”
*171 Thereupon the said Baker presented said warrant to the county treasurer and received thereon public moneys of Darke county, Ohio, from the said treasurer in the amount of the warrant; and that at said time there was not any money due or owing the said Baker from Darke county, and that the said payment of said money to said Baker was at the time without any warrant or authority ■of law.
The questions involved in this case are substantially the ones raised by the demurrer to the amended petition.
1. Has- -the plaintiff legal capacity to sue?
2. Does the amended petition set forth facts sufficient to constitute a cause of action?
It is conceded by counsel on both sides of this case that this action depends very largely upon the interpretation to be given to Section 2921, General Code. The statute reads as follows:
“Upon being satisfied that funds of the county, or public moneys in the hands of the county treasurer or belonging to the county, are about to be or have been, misapplied, or that any such public moneys have been illegally drawn, or withheld from, the county treasury, or that a contract in contravention of law has been, or is about to be entered into, or has been or is being executed, or that a contract was procured by fraud or corruption, or that any property, real or personal, belonging to the county is being illegally used or occupied, or is being used or occupied in violation of contract, or that the terms of a contract made by or on behalf of the county are being or have been violated, or that money is due the county, the *172 prosecuting attorneys of the several counties of the state may apply, by civil action in the name of the state, to a court of competent jurisdiction, to restrain such contemplated misapplication of funds, or the completion of such illegal contract not fully completed, or to recover, for the use of the county all public moneys so misapplied or illegally .drawn or withheld from the county treasury, or to recover, for the benefit of the county, damages resulting from the execution of such illegal contract, or to recover, for the benefit of the county, damages resulting from the non-performance of the terms of such contract, or to otherwise enforce it, or to recover such money due the county.”'
What is the common-sense construction of this statute as applied to the facts of this case?
In construing any written instrument, whether' it be a will, contract, statute, or constitution, the primary and paramount rule is: What was the intent or purpose of the makers of such written instrument? And it is conceded to be the almost universal law that that intent or purpose shall be chiefly gathered from the language employed in such instrument.
If it be a penal statute that is under consideration, it is to be strictly construed in favor of the persons to be punished. If it be a remedial statute, it is to be liberally construed in favor of the persons to be benefited.
The strict construction, however, must not squeeze out the. lifeblood of the statute, nor should the liberal construction result in the exercise of the legislative power of amendment under the mask of so-called interpretation. In short, it is not *173 the proper province of the court to add to or subtract from the intended meaning and scope of the statute. In any case, the interpretation should be reasonable, consistent with the language used, and conducive to the purposes to be accomplished by the enactment of the statute.
What was the intention of the lawmakers who made this statute? What was their purpose in passing it?
Upon the most superficial reading of this statute, can any fair-minded person, in the . light of common sense as well as the common law, doubt that the design and purpose was to protect the public in their contracts, their property and their moneys ?
If not, what was it?
An analysis of the foregoing Section 2921, General Code, discloses the following classification with reference to the moneys or funds specified in the statute, to-wit:
1. Funds of the county.
2. Public moneys in the hands of the county treasurer; or
3. (Public moneys) belonging to the county.
•It is claimed on the part of the defendant that by reason of the fact that the money paid Baker was for the balance of the contract price for the construction of a ditch improvement, which ditch was ultimately paid for by the adjacent and abutting owners who are benefited by the improvement, through assessments duly made upon their several lands, the moneys in ■ question were not public moneys, or county moneys, as specified by the statute, but that they were in truth and in *174 fact private moneys belonging to the parties assessed for the construction of the ditch.
It is therefore contended by the defendant that if there was any remedy in anybody to recover back süch money so wrongfully paid out, it would not be in the prosecuting attorney for and' on behalf of the county, but. in some party assessed for the ditch in behalf of himself and others, who were likewise severally assessed, and that, therefore, the plaintiff had no capacity to sue.
As to classes one and three above cited, to-wit: (1) Funds of the county, and (3) public moneys belonging to the county, there might be at first blush some doubt in the strict and literal meaning of the words designating the funds. Still, even applying the strictest rule of construction, it must be conceded that the funds in question upon which the warrant was drawn, or out of which the warrant was paid, were then in the custody of the county.
The county, therefore, was the bailee of these funds at the time and had therefore their rightful custody, if for no other purpose, as a disbursing agent, or as a political subdivision of the state exercising certain administrative functions conferred by law.
Manifestly the bailee has a right to protect his; funds while they are rightfully in his custody, and, if necessary, may do so by a suit at law or in equity, the more so where the power is directly conferred by statute.
Suppose, for- instance, these funds had been stolen and the indictment charged that the money, wa.s the. property of. said Darke county, Ohio, and. *175 upon the trial it should turn out that this was money in the custody of the people of the county arising out of the ditch assessments, and that, therefore, they were not properly, really, or strictly,, county funds or public moneys, but that the county simply had the right of possession as a bailee. Would there be any question but that the thief could be convicted of larceny notwithstanding the fact that the indictment alleged the ownership of the property absolutely and unconditionally in the county?
Certainly not. The books are full of just such cases.
If ownership of the property in a larceny prosecution may be pleaded and proved in the bailee as the real owner, much more so in the ordinary civil proceeding to recover back money may the ownership of property be pleaded and proven in the bailee as owner.
Conceding for the purpose of this case that the fund out of which the warrant was paid was a fund raised by ditch assessment (though neither the petition nor the warrant discloses whether it was ditch funds raised by general taxation or taxation of the persons benefited in the neighborhood of the ditch), what was each contributor’s interest in said fund after he had paid his assessment into the county, treasury?
Had such contributor not fully and eternally lost all control, dominion and interest in said fund? Had he not absolutely parted with his property in the same ? ■ Indeed, has it not been repeatedly held by courts without number that if after payment of the assessment the law under which the ditch *176 was constructed or the assessment made was held unconstitutional the assessment cannot be recovered back unless payment was made under a proper protest? 30 Cyc., 1315.
Title to those moneys must be somewhere and in somebody.. It is not in the contributors to the fund. Where else can it be than in the county or its agent, the county treasurer?
Irreverent as it may seem to some, courts after all are but the people’s agents in the transaction of public business.
If agents in the transaction of private business use their power against their principals’ interests, we know what speedily happens. Why should there be any less fidelity in the transaction and protection of the public business by our courts?
The purpose, phrasing and power of the statute all happily combine to protect the people’s purse and property and to protect and promote official honesty. Our construction should' defend and not defeat the sound statesmanship of this statute.
The legislature, however, seemed to anticipate that some court might interpret this statute with superlative strictness upon the question of ownership, and therefore they put in another class: (2)-Public moneys in the hands of the county treasurer.
Does anybody doubt that this money paid to Baker was, before the payment by the county treasurer, in the hands of the county treasurer?
No doubt, by a splitting of frog hairs, it could be urged with equal force that it was not in the hands of the county treasurer but that it was in the vaults of the county treasury. This is the *177 kind of construction wherein the letter killeth but the spirit giveth life.
Authority for the judgments below is claimed by virtue of the case of Loe v. State, ex rel., 82 Ohio St., 73. The syllabus reads as follows:
“Moneys which are paid into the county treasury by virtue of proceedings for the location and construction of a county ditch in conformity with Section 4447 and cognate sections of Revised Statutes, are not ‘funds of the county/ nor ‘public moneys in the hands of the county treasurer belonging to the county/ within the meaning of Section 1277, Revised Statutes; and where one who has contracted for the construction of all or a part of a county ditch has been fully paid by the county treasurer on warrants issued to such contractor by the county auditor, when the work of construction so contracted for was but partially performed, the prosecuting attorney is not authorized by said Section 1277 to bring and maintain an action to recover back from the contractor the amount received by him in excess of the work actually performed.”
It will be observed that as far as the essential facts are concerned the cases are on all fours. The syllabus of this case, however, overlooked one very important distinction in the language of the statute, and that is the second class above referred to: “Public moneys in the hands of the county treasurer.”
The legislature evidently intended that not only public mollejas belonging to the county might be recovered in a suit at law, but public moneys in the hands of the county treasurer were also to be *178 recoverable in a suit at law. The latter class of public moneys seems to have been overlooked in the Loe case.
How public must money be before it is public enough to be embraced in this statute?
In the first place, we take it that a county ditch is certainly a public matter. Section 6443 et seq.} General Code; Section 4447, et seq., Revised Statutes, all recognize it as a public matter. It is petitioned for by the public. The petition itself recites that the improvement is for the “public health, convenience and' welfare,” and the commissioners must so find upon their journal before the ditch may be constructed. The petition is addressed to the board of county commissioners. The legislation from one step to another is conducted by the board of county commissioners, the viewers appointed by them, and the county surveyor. The assessments are made by public officers and collected by public officers. The contract is let and supervised by the public officers. And yet it is seriously contended that it is a private transaction, or, at all events, the moneys in the hands of the county treasurer arising from this improvement and assessment upon the abutting landowners, is not within the scope, purpose and limitations of the statute.
The record does not disclose how many individual people were assessed for this improvement. But evidently there was a considerable number in the neighborhood of the ditch. Enough at all events to invoke the jurisdiction of the public authorities to legislate upon and construct a public improvement. And it would be folly to *179 say that in order to protect the fund arising from this improvement the public officers who assessed and collected it were powerless to protect it from crooks, criminals and plunderers, and that the same might be converted to private use by embezzlement and the public authorities be powerless to prevent or punish.
From time immemorial ditches have been recognized as proper public uses. It would, seem by a parity of reasons and logic that the funds contributed, no matter by whom, and paid into the public treasury would thereby become public funds within the meaning of the statute. So that we have “public” as a word of qualification and characterization not only as to the use but as to the funds necessary to pay for the use.
Lest some, however, be in want of authority of other courts upon the question and meaning of the word “public” in this connection, the following are cited:
“The term ‘public’ does not mean all the people, nor most of the people, nor very many of the people of a place; but so many of them as contra-distinguishes them from a few.” State v. Luce, 9 Houst. (Del.), 396, 399, 32 Atl. Rep., 1076; United States v. Luce, 141 Fed. Rep., 385, 392. 32 Cyc., 747 et seq.; Thomas v. County Commissioners, 5 N. P., 449, 5 O. Dec., 503.
The interpretation necessary to sustain the judgments below is of the sort that bleeds statutes to death and pulls the teeth out ■ of • remedial laws not only designed, but absolutely essential, to protect the public interests and safeguard the public funds. We desire to squarely and distinctly *180 disapprove and reverse the case of Loe v. State, supra, so far as it relates to the case at bar.
Aside, however, from the construction of the statute as aforesaid, we believe that the petition itself stated a good cause of action when it averred the language of the statute as follows:
“That thereupon the said Ezra Baker presented said warrant to the county treasurer and received thereon public moneys of Darke county, Ohio, from said treasurer in the sum of $497.75.”
Here was a square, straight declaration that it was public money of Darke county, Ohio, that had been paid out.
Clearly this, in the first instance, brought the petition squarely under the language of the statute above cited even under the Loe case.
But we have not been disposed to decide this case upon this last proposition, because at once upon the close of the plaintiff’s case a motion would doubtless be interposed to direct a verdict by reason of the authority of the Loe case, supra, and therefore we have gone into the whole question, so that the power of the prosecuting attorney in reference to public moneys, propert)'-, contracts, and the like, may be construed in the spirit in which the statute was enacted, to-wit, the full and complete protection of the people’s property, the people’s contracts, the people’s moneys, whether that money be a fund created by a dozen contributors for a ditch, a hundred contributors for a road, or ten thousand contributors for a general tax fund.
Judgments of the common pleas and circuit courts reversed, and cause remanded to the court *181 of common pleas of Darke county, with instructions to overrule said demurrer, and for further proceeding's according to law.

Reversed.

Johnson, Donahue, Newman and Wilkin, JJ., concur.
Shauck, C. J., concurs in the judgment.